We have three cases this morning. We'll call our first case, United States v. Terrence Chatman. Good morning. May it please the Court? Counsel. My name is Caroline Cinquanto, and I represent the appellate Terrence Chatman. May I reserve three minutes for rebuttal? Yes, that's granted. Thank you. Mr. Chatman raises three issues on appeal. The first issue is whether the jury instructions diluted the standard of proof and shifted the government's burden of proof to the defendant. The second issue is whether the case should be remanded for resentencing pursuant to United States v. Dixon. And the third issue is whether Mr. Chatman should be subject to enhanced sentencing under the armed career criminal sentencing provision. I'd like to talk first about the jury instructions. The standard of review is plain error. There are two instructions that we have challenged on appeal. These instructions can be found in the appendix on pages 589 and 590. The first instruction is this. It says the crucial, hardcore question you must ask yourself as you sift through the evidence is whether you find the truth. This is a quest for truth as to the facts. That is what trials are all about. It is not a battle of wits. It is not a contest of salesmanship. And it is not a contest of personality. The only triumph in any case is whether or not the truth triumphs. Is that incorrect? Excuse me? I mean, that sounds right to me. Excuse me, sir? A trial is a quest for the truth. What's wrong with that? Your Honor, in this particular case, the words themselves, if we were just looking at the words alone, Your Honor, then I believe that there would not be error in this case. However, if you combine the words with the defense theory, and the defense theory is that there was no irreconcilable conflict between the government and the defense, like the case in Rawlings. Your Honor, in Rawlings from the D.C. Circuit in 1996, the court found that language regarding the quest for the truth, when there was a situation that when there was no irreconcilable conflict between the government and the defense, in other words, sir, that both sides could have been correct. In this case, Mr. Chapman did not refute the fact that a gun was found in the ceiling of his bedroom. That's the facts of this case. Counsel, your problem here is that while what you have said, if that were the only thing in the instruction, it would be wrong, because it didn't tell the jury really what its job was. But the ensuing paragraph specifically does. It tells the jury what they're to do, determine the guilt or innocence, the basis of the evidence, beyond a reasonable doubt, et cetera, et cetera. And we look at instructions as a whole. How are we to reason that as a whole there was plain error? It wasn't even objected to. There was plain error in this instruction. Your Honor, well, the Supreme Court has held that there can be one or two lines in a jury instruction that can render the entire instruction, that there was error in the entire instruction. Well, that would be the case if it said, you know, for instance, the defendant has the obligation to prove, you know, innocence, or something is clearly wrong. This is not totally wrong, talking about truth-seeking. And I just have a hard time finding that this is that case. And I understand your position. And I said to Judge Fuentes that if this were the ward standing alone, then I do not believe that this would rise to the level of reversible error. However, Your Honor, when we're dealing with a situation where there is no question of truth, in this particular case both parties could have been truthful. Mr. Chapman, in fact, conceded that the government agent found the weapon in the ceiling of his bedroom. Therefore, he conceded that the government witness was being truthful. Therefore, when the district court framed the issue here in terms of truth, it's pitting one side against the other. One side is truthful. One side is not being truthful. But he did constantly remind the jury that the government must prove each and every element of the offense beyond a reasonable doubt. Why does that, in a sense, satisfy your concern about that one phrase, the trial is a quest for the truth? Well, Your Honor, as the Court found in Hernandez, in the Hernandez case, that contradictory instructions that do not explain an earlier error is confusing. It leads to confusion for the jury. On the one hand, we're telling the jury that this is a search for the truth. One side is right, one side is wrong. Then you're giving them other instructions that directly contradict that. Was there any question under these instructions about who had the burden of proof beyond a reasonable doubt? Yes, Your Honor, there was, as a matter of fact. The second jury instruction with which we take issue is this. It says, The issue, and the only issue for you to decide, is whether or not the defendant has violated federal law. If you find that the law has not been violated, you should not hesitate for any reason to return a verdict of not guilty. By telling the jury that the only issue is whether the defendant has violated federal law and that if they find that he has not violated federal law, they should find him not guilty, that effectively led the jury to believe that the defendant had the burden of proving that he did not violate the law. He also said, let me repeat that again. This is to say he's repeating it now. The burden or obligation to prove beyond a reasonable doubt is on the government to prove the defendant guilty. And this burden stays with the government throughout the trial. Your Honor, that is correct. But we have contradictory instructions that have been given to the jury now. We don't know which is the instruction that the jury listened to. Well, the jury wasn't confused. And maybe there had been an objection raised at the time, but to say plain error, it's just a very, it's a very, I've never had a situation where a jury instruction would be plain error when it's not even called to the attention of the district court. Your Honor, unfortunately I was in trial counsel in this case and I was appointed over the appeal. An objection, of course, should have been lodged by trial counsel and it was not. I mean, you're putting a burden on a district court to sit there and any time something is said that maybe the jury might take perhaps as detracting from something else, the district court is supposed to say, wait a minute, you know, this is wrong. I'd really like you to move on to your other issues, if you want. I think your Apprendi issue is a little bit more difficult than this one. I mean, we'll obviously take a look, a further look at the instructions as you've requested, but I think I'd like you to use your time in that way. Absolutely, Your Honor. I'd like to move on to point three, which is the Apprendi issue. The court should not have applied the armed career criminal sentencing provision for three reasons. First, the district court did not have enough information to find that the prior conviction satisfied the separate episodes test. Second, that in order to determine if the prior conviction satisfied the separate episodes test, the court is required to conduct a circumstance-specific analysis, which requires a finding by a jury by proof beyond a reasonable doubt. Why is that? We have pretty much bought into the idea that committed on different occasions, which is what this is. It's not separate episodes. It's offenses committed on occasions different from each other, right, is a distinct in time test. There's no challenge to the dates of June 7th, June 12th, and July 20th, is it? That's correct, Your Honor. There's no challenge to those dates, is there? No, Your Honor. No, okay. How can it be that we need a jury to determine that these are distinct in time? Your Honor, in this particular case, anyone who has tried drug cases understands that these are crimes that usually have a continuing course of conduct. That's not the test. And if it were, you know, in a bar at 4 o'clock, he sold. At 4.10, he sold. At 4.30, he sold. At 4.45, he sold. And when he was in the bar, you know, he was attending his brother's birthday party or something, you know, maybe we could find the occasion is not different, et cetera, et cetera. But we've got three distinct dates. How can it be that this would be even a question of fact? Isn't this essentially a question of law because we've defined what separate occasions? Well, Your Honor, I believe that it's more than just separate occasions. I believe that the test is if it's a different location, if it's a different victim, if it's a different occasion. And in the Cardarest case, for example, Your Honor, I think that this is specifically one of those cases where the court said that, excuse me for a minute. You can't have a different transaction if the transaction occurs at a different location? In other words, you can't have two different drug sales if they're both done at a broader market? Well, Your Honor, you can. But what I think the court needs to delve into when they're determining these facts, especially for something so significant as applying the ACCA in these cases, is the underlying facts. For example, we don't know if the drug transaction on day one in this particular circumstance was dependent on the drug transaction on day five. We don't know if the price of the drugs. What difference would that make under the case law? We do know they're two different sales. They were two different sales, but they were two different sales at the same location to the same confidential informant. This is an informant that we do not have any information about what was told, what was spoken to between them during the course of these. But the case says that that is the relevant inquiry. The Carderas case, Your Honor, out of the Seventh Circuit, which was decided in 2007, that was a case where there was a sale of drugs within 45 minutes and the location was separate. It was within a half a block. Okay, but that's not this case. It's not this case. But what Carderas talked about, which I thought was significant, Your Honor, is that they said, well, for example, we don't have a situation where the price of the drugs was contingent upon the next sale. And what Carderas pointed out is that in this particular case, for example, we don't know if we don't have a case. I don't know how that case helps you, because as I understand Carderas, the Seventh Circuit case, there were two sales 45 minutes and a half a block away from each other. And the court found that there were separate deals because in each one of them, the seller had an opportunity to say, no, I'm not going to sell it, but didn't exercise that option and kept selling. Your Honor. So how does that help you? It helps me because in part of the analysis that this case undertook, one of the factors that they looked at was the fact that the one sale was not contingent upon the next sale. For example, in this case, we don't know if Mr. Chapman said, okay, the price of this particular drug is this amount because you're going to come back in five days and you're going to buy another quantity of drugs. Often in these cases, sales will be contingent upon each other, and prices will be set upon the type of weight that is actually being sold. So you want us to adopt that test and, in effect, do away with the distinct in time concept? I think, Your Honor, that there's more factors than just the timing issue. I think with the separate episodes test – I agree with you if the bar that I talked about, you know, 45 minutes or something, then at least there's an inquiry. I just don't see it under the facts of this case. Your Honor, the Third Circuit has not yet had an opportunity to rule or to apply the separate episodes test in a drug case. You applied it in Schoolcraft with robbery cases, and you've also applied it in Mucha, which was an unpublished opinion in regards to drug cases. But there's not been a published opinion applying this test. And respectfully, I know that my time is out, Your Honor. I would suggest that the proper inquiry would be dealing with drug offenses as we do with the sentencing guidelines and grouping them in terms of that for episodes versus separating them out. One question. Do you agree that this is a plain error standard because Apprendi was never raised below? Yes. Yes, Your Honor. Do you have anything else? Okay. We'll hear from you on rebuttal. Mr. Zosmer. Good morning, Your Honors. May it please the Court. Robert Zosmer on behalf of the government. I want to focus on the Apprendi question that Judge Rendell referred to, but if I could just say one brief thing about the jury instructions, and of course I'll answer any questions about that. One additional point that we could have made in our brief, but I didn't do it until yesterday, is I went through the transcript and I counted the number of times that Judge Sanchez referred to reasonable doubt. And in those instructions, he referred to the reasonable doubt. Appropriately? I mean, in the right way? The right way. Beyond a reasonable doubt? Beyond a reasonable doubt, burdens on the government 38 times. Thirty-one of those times was before this quest for truth paragraph, seven times afterwards, including immediately in the next paragraph. So we don't think there's any doubt that this jury, if it understood anything. You say it's beyond a reasonable doubt. Exactly. And perhaps even beyond all doubt, which we normally push juries away from. So that's my point on the jury instructions, unless the court has other questions regarding that. And, of course, we believe the Benord decision, though not precedential, authored by Judge Hardiman, came to the exact same result in pretty much the same case. With regard to the armed career criminal, there are a couple issues here. First, with regard to separate occasions, the law of this court in Schoolcraft is clear. Schoolcraft involved three armed robberies that took place within a two-hour period. So it's even more dramatic than the facts that we have here. Although that was a different issue. It had to do with whether they're intervening, arrest, et cetera. It's not entirely on point. Well, that's true, except that then every court since has followed Schoolcraft in this exact context. And I don't want to just stand here and say, well, every other court has done it, and therefore this court should also. It's important to look at the reason behind it. And the reason is that we're dealing with statutory language here. The statutory language says, occasions different from one another. And the normal understanding of that is if you sell drugs today and come back next Tuesday and sell drugs again, those are obviously separate occasions. Is this a matter of fact or a matter of law? Well, it's certainly a factual question with regard to the conviction in defining the date of the occasion. But here we have dates, and the dates aren't challenged. I mean, it would have been even more interesting if they were, because the pre-sentence report is pretty flimsy in terms of exactly what happened on what dates. But the dates are not challenged. Correct. So we have the issue of what constitutes an occasion separate from one another. Again, is that a factual question, or could it be a factual question in some situations versus a question of law in other situations? Right, it's both. I mean, first you have to determine the facts, which is what are the dates that we're dealing with. And then you have the legal determination of what does occasion mean. If it's a fact that increases the penalty, then why don't we let the jury decide as Ms. Cuanto urges us? Because of the Supreme Court's decision in Amandaris-Torres that says facts related to a prior conviction that increase the statutory maximum are not submitted to the jury. And that exception was explicitly carved out of Apprendi and Booker and everything that has come since. You say that goes to the date. It goes to the date. Does that go also to the meaning of occasion? No, I think that's a legal determination. Even if you gave this issue to a jury, it would be incumbent on the court to give an instruction as to what occasion meant so the jury could then find the fact and apply it to the law. The separate episodes test, which is the definition of occasion, is a legal determination, which I think has been made by this court and certainly all others. The legal suggestion that my friend Ms. Cuanto is making I just don't think is a credible interpretation of the statutory language. She would have it that if somebody sold drugs, you could sit on the same porch in the same spot and sell drugs every day for an entire year. And she would say, well, that's one occasion, even if the person was then convicted of 365 cases. That's not a plausible statutory interpretation. What is plausible is what every court has said, which is if they're distinct in time, they are separate occasions, and certainly these were. Is there a gold standard for us to consider? I mean, what would you posit as the best? I mean, there are differences in time, there are differences in place, there are differences in people, et cetera. Well, I think the most important, the gold standard, Your Honor, is the time. If you have separate days, that pretty much ends the inquiry. Where courts have then said we'll consider other factors, such as the location and things like that, they're dealing with difficult cases. They're dealing with Judge Rendell's bar with the birthday party, and they're saying, okay, here are some other factors we can consider. The only court that really found that they were not separate is that recent, I think it's Willoughby case in the Eighth Circuit, where the sales were really simultaneous, even after they considered all the factors. Now, should a jury decide, should a jury be given that case, the Bar case or the Willoughby case, to decide, are these indeed on occasion separate from each other? No. Our position is that under Almandar, as Taurus knows. So I'm bouncing back and forth here between the separate episodes issue and the Apprendi issue. It's a recidivist statute. Exactly. That's the key distinction you're making. Absolutely. If it's not a recidivist statute, then it's game on with the Apprendi analysis. Correct. And this court held immediately after Apprendi, it applied Almandar as Taurus and the continued vitality of Almandar as Taurus to the Armed Career Criminal Act, which is what we're dealing with here. And that law has never changed. But how deeply do you drill down in terms of what the fact of the prior conviction was? I mean, the fact of the prior conviction is something that the court said, well, that's clearly something that's been proven. There's been a jury trial, so we know there was a conviction. And we know it was for drugs and we know it was on a certain date. But when you drill deeper than that in, let's say, the Bar scenario, and you say, well, was he sitting on the same stool and were these the same people or did everybody clear out of the bar and the party was basically over and then somebody else walked in? I mean, you're looking beyond that to find out whether it was the same occasion. Isn't there a limit to the applicability of Almandar as Taurus in this situation? There probably is a limit. We have not reached it here. The question that this court is asking is a very important question that's been asked in a number of different contexts. And there's nothing that explicit in this court, but we cite about 10 other circuits that have not only held that different occasions is a fact that a judge can find, but have also clearly explained that the fact of a prior conviction, the Almandar as exception, is not just limited to the plain conviction on a piece of paper. It has to include the other basic facts. One, for example, which could also be very controversial, is, is it the same defendant? Is it the same person who incurred that previous conviction? And every court has held that this is a decision a judge can make consistent with the prior conviction exception. Another, which I would say goes even further than this case, of trying to just ascertain the date, which is what we're dealing with here. Date is a basic fact of a conviction, which is ascertainable readily from judicial records. But what about when we get into what- Well, here it would have been an interesting issue because the pre-sentence report just has a couple of dates in it. It's not very explicit in terms of exactly what the conviction was and where, and it's very vague. Well, I would suggest that that's sufficient because, again, all we're looking for are the dates, and those are very clearly there, and we say that that's sufficient. But just to give my other example of a more difficult question, the courts are allowed to address under the prior conviction exception, and that's the nature of the crime. As this court well knows and this court has often addressed, we have the categorical approach where if we want to see if the crime is within the recidivist statute, we have to look only at the elements. But then we're allowed the modified categorical approach where a statute applies to more than one circumstance, and we can look to reliable judicial records under Shepard to see whether what the person admitted or was convicted of falls within the category. That's quite a factual determination as well, that Shepard explicitly permits a district court to do pursuant to Almendar's torus. Given the plain error standard, do we even need to reach Almendar's torus? I don't think so. And then the other thing I have to say about Apprendi and it applies directly to plain error is we have an admission here. The plain error is not just that he didn't object to anything. At sentencing, the defendant did not object to the pre-sentence report and explicitly agreed that the Armed Career Criminal Act would apply. And as we all know, Apprendi can be satisfied in two ways. It can be satisfied certainly by a jury determination. You're saying because he agreed that it applies, because counsel waived his challenge? No, I'm saying what we have here, Your Honor, is an admission of the facts. Admission of the dates or admission of the applicability of the law? Well, both, actually. I don't think admission is the applicability of the law. Well, we do. I mean, in the transcript, it explicitly came up. Before sentencing, the defendant had objected to both career offender and armed career criminal status. At the sentencing hearing itself, I could pull up an appendix. Counsel waived that, and then three days after sentencing, the defendant said, wait a minute, I don't agree, so I'm not sure we're going to base it on that. So that has an effect in this case. Well, maybe, and maybe we'll be back here. I don't think so because I think legally it turns out the same way, and there's no prejudice. But when you say under a plain error standard that given the fact that there are three dates so distinct in time, there can be no plain error because no jury, given the law, even if you had Apprendi and you felt that Apprendi applied, no jury could find that these were not separate offenses. That's exactly right, and that's where we cite the Cotton case in the Supreme Court, which is the paradigmatic plain error case for Apprendi error, where there the defendants were sentenced to 30 years above the otherwise applicable maximum of 20 because there could be no dispute regarding the quantity that was involved. Here, even when the defendant filed his pro se motion and said, wait a second, I object to our criminal, he has never disputed these dates. And this Court has held that not objecting to facts in a pre-sentence report is an admission. So we have Apprendi satisfied that way. Well, not only that, on appeal he doesn't object. That's right. Even if we didn't, I mean, that case, that Siegel case, it's pretty broad. I'm not sure if we want to just rely on that. But it would be one thing if he came to us and said, you know, these dates are wrong. That would be a different issue. Right, and so now we come full circle to the legal point that I've made, which is that separate dates like this are sufficient without knowing additional facts. How does the conspiracy conviction play in all this? Does it merge with the two sales? It does not because that conspiracy charge, again, I'm only relying on the undisputed pre-sentence report, but it says that that conspiracy took place on a specific date, that on that date, I think it was July 20th, he was found in this residence with additional contraband to sell and another gentleman. And that's the conspiracy that's charged. That other gentleman is not referred to earlier on with regard to the two earlier incidents. So based on these facts that were not disputed, he was an armed career criminal. And, you know, I'm saying several things about Apprendi. First and most important, we think this is directly covered by Almendarez-Torres and that we would have to hear from the Supreme Court if that is going to be overruled and not applied. But even if Almendarez-Torres did go away, you still have the defendant's admission. You have the equivalent of a plea as to these facts, and you have no plain error because any jury would have reached the same decision. So I'm making multiple arguments. Could you touch on the Fair Sentencing Act and the issue that is currently before the Supreme Court and whether that would impact this case? Sure. It will not impact this case in our view. This Court's precedent, of course, and there's a split in the circuits, this Court's view is that the Fair Sentencing Act does apply to anyone sentenced after August 3rd of 2010, even if their conviction was beforehand. The government changed its position mid-course on that. I had the privilege of arguing to this Court in Dixon one way and then sending in a letter a couple weeks later the other way after my superiors came to, I guess I'd have to say, a better decision. But now it's before the Supreme Court in the Hill case. It was argued about a month ago we'll have a ruling within a month. Perhaps this Court's view will be overturned, perhaps it won't, but it doesn't matter because the only way the Fair Sentencing Act applied to this sentencing was it suggested that there was a 10-year mandatory minimum on count one and a lifetime maximum. If the Fair Sentencing Act applies to this gentleman, as we think it should under Dixon, then there is no mandatory minimum and the maximum goes down to 30 years. But none of that had any bearing on his sentence at all because he received a guideline sentence within the range of 25 years and up. Judge Sanchez in his post-trial opinion explicitly said, I gave him a guideline sentence, the mandatory minimum didn't matter. The final reason we know the mandatory minimum didn't matter is because he had a concurrent mandatory minimum of 15 years on count four, which is the Armed Career Criminal Act. So that 10-year mandatory went away in this case no matter what. Ms. Sincuanto has suggested that I'm not right about that because the sentences on counts one and two could be lower if you look to the drugs alone. And that's just not right. That's not how the guidelines operate. The guidelines say that you come up with a total punishment for all the crimes and you apply that total punishment to every count, that's Section 5G1.2, as long as you're within the statutory maximum. And we're within the statutory maximum on count one. He received a 25-year sentence even if the Fair Sentencing Act is applied, making it a 30-year maximum. So it just didn't have a bearing in this case. What does matter in this case is the Armed Career Criminal Act. I mean, we all have to be upfront about that, and that's obviously why the defendant went to trial. He went to trial and conceded the drug offenses and disputed the gun. And because, correctly, it's the gun that drives the sentence here. It's what makes him an armed career criminal. It's what takes what would be a crack guideline range of maybe in the 8- to 10-year range, and unfortunately for Mr. Chapman moves it way up the scale. And so it really all comes back to that. Thank you very much, Your Honor. Thank you, Mr. Zazary. Ms. Chimplanto. I think it's clear from the cases that have come down from the Supreme Court that there is some dissatisfaction with Almedares-Torres. And I think if we take a look at the case law as it's evolved over the past decade, we'll see that we've gone from a categorical approach, which was the first way that these recidivist statutes were being applied. You can just take a look at the fact of the conviction itself. And then we realize that, you know what, that's not going to really work. We need to take a look at some more information. So let's do a modified categorical approach. And then finally, with this court decided in the immigration case that you're on, that in that particular case you need to have a circumstance-specific approach. And what my position here is. How does all that impact this case? How it impacts is that we're realizing that in order for these types of statutes, for the prior convictions to be applied for the ACCA, for example, that we need to go beyond just the simple fact of the conviction. There is so much more. There is so much more that you need to know in order to determine whether or not it's just a conviction or whether or not it's a specific episode. You need to know the actual specific facts that underlie that conviction. And in order for that to happen, you need to look at the specific circumstances of the convictions themselves. And so what I'm asking is we only have recourse to that when it's a statute where it's unclear whether it satisfies the recidivist statute, right? I mean, we've got these statutes that might break down, for example, escape, and there could be seven different subsections and three of them are violent and four of them are not. That's when we have recourse to the modified categorical approach, isn't it? But, Your Honor, I think that the law we're realizing, I believe, that the case law, and I think the Supreme Court is realizing, is that you can't even force specific episodes type of test. That, you know, we thought it was generic to look at, you know, if it was a different time, different location, different place. But I think you need to understand what actually occurs during these particular crimes to see if they are, in fact, separate episodes. For example, What case law supports that? Your Honor, I think this is, there is no case law that supports that. I believe that the recent case that the Supreme Court decided in the Nuagen case, that they realized that they had to dig a little bit deeper than just the fact of the actual conviction and they had to actually look at the specific circumstances. So the law, Your Honor, is flexible. I think that there, I think that we've, it's been evolving over the past decade and I think there's been a realization that we just can't simply look at the fact of a conviction or even the modified approach, that you actually have to look at the specific circumstances. In this particular case, we don't know if Mr. Chapman said, I will sell you this bag of crack, you know, for this price if you come back in five days and I'll give you another. Maybe the price of the drugs were related. Somehow maybe that, that, that. That might help you if it were a conspiracy case. But it, right? These are separate crimes as so defined. They're not defined as conspiracy crimes. I understand that it was not charged as a conspiracy, but we don't know if actually that this was a separate episode and we don't know that because we don't know the underlying facts of what actually occurred in this particular case. But you use the separate episode language, but that doesn't appear in the statute. It's an offense committed on an occasion different from each other. And that's a little different. And Nijewan was, you know, a crime involving a loss of more than $10,000. Where there, you know, you have to look. What was the loss? It's definitely circumstance specific. Here, an occasion separate from each other is a very different type of statutory provision. I understand your concern. But I believe that it's not just simply as basic as in a time that's, if it's a instance that's separated by a course of days or a course of hours or a course of minutes. I think that the real question is whether or not, and I think what Congress intended was whether or not that this was part of the same transaction. Well, they know how to use course of conduct when they want to. They can say part of the same transaction, say course of conduct, and we have that in the guidelines and, you know, we group things together. But they didn't use that language. So it's hard for us to interpret that as a need to look at whether it was a course of conduct. That's not the statutory language. I understand that position, Your Honor. But I think that in all fairness, if, you know, especially if we're taking a look at the sentencing guidelines and we see that, you know, when it benefits the government, we group it together. But yet when, you know, the defendant never seems to get a break here. Your view is that the judge simply got it wrong or is it that it's not a judicial decision? I think, Your Honor, what happened was is that this was, that Almoderes-Torres was a misguided decision. And I think that it wasn't wrong, it wasn't wrong, but I think that the law has evolved over the past decade. And we are realizing that it's not just a simple approach anymore of whether there's a conviction or not a conviction. It's a question of what is underlying the facts of the condition as to whether or not it's the same transaction or it's a separate. Does it go to the jury or can a judge make the decision? There's two options, Your Honor. I believe that this should be going to the jury. I believe it's a jury fact. However, if not, then I think that the court can make the decision, but they need to take a look at, they need to use analysis much like the sentencing guidelines do when they're grouping offenses. Victims are always taken separately and drugs are always grouped together. And I think that that would be the appropriate approach. Thank you. Thank you, Your Honor. Thank you. The case was well argued. We'll take it under advisement. Thank you.